UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Action No.: 3:13-cv-3187-TLW-TER |
| Plaintiff, | |
| -vs- | |
| | **REPORT AND RECOMMENDATION** |
| SAMUEL F. CREWS, III, ELIZABETH W. CREWS, JP MORGAN CHASE BANK, N.A., FRANK J. WYMAN, MARGARET D. WYMAN, and SOUTH CAROLINA DEPARTMENT OF REVENUE, | |
| Defendants. | |

## I.   INTRODUCTION

The Government brings this action to reduce to judgment several federal income tax liabilities owed by Samuel F. Crews, III and Elizabeth Crews as well as the Trust Fund Recovery Penalty assessed against Mr. Crews pursuant to 26 U.S.C. § 6672.[1]  Presently before the Court is the Government's Motion for Summary Judgment against the Crews (Document # 62).  At the time the motion was filed both the Crews were proceeding pro se.  Therefore they were advised pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to the Government's motion could result in the motion being granted.  Elizabeth Crews subsequently retained counsel and reached a settlement with the Government, who then filed a separate Joint Motion for Entry of Judgment (Document # 81) as to the claims against Elizabeth Crews only. Samuel Crews did not file a response to the Motion for Summary Judgment.

On July 21, 2015, the court held a telephone conference to address the sale of the property

---

[1] The parties filed a Stipulation of Dismissal (Document # 95) as to the Government's foreclosure cause of action.

subject to the foreclosure cause of action, and allowed the Government to supplement (Document # 99) it's motion for summary judgment to reflect that sale and its impact on the liabilities owed. Mr. Crews filed a response (Document # 102) to that supplement, and the Government filed a reply (Document # 105).

All pretrial proceedings in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(e). This Report and Recommendation is entered for review by the district judge.

## II.  FACTS

### A.  Joint Federal Income Tax Liabilities

Samuel and Elizabeth Crews filed joint federal income tax returns for the 2002, 2006, 2009, 2010 and 2011 tax years with the IRS reporting tax liabilities for each of those years. They did not pay those liabilities in full. Freeman Decl. ¶ 4 (Ex. to Pl. Motion). On the dates set forth below, a delegate of the Secretary of the Treasury of the United States made assessments against Samuel and Elizabeth Crews for their unpaid joint federal income taxes, penalties and interest for the 2002, 2006, 2009, 2010 and 2011 years based on the amounts they reported on their joint federal income tax returns.

| Tax Year | Assessment Date | Tax | Estimated Tax Penalty | Late-Filing Penalty | Failure-to-Pay Penalty | Interest |
|---|---|---|---|---|---|---|
| 2002 | 11/24/2003 | 43,665.00 | 1,245.00 | 1,705.19 | 1,515.72 | 1,124.01 |
|  | 10/31/2005 |  |  |  | 7,957.52 |  |
| 2006 | 11/26/2007 | 5,693.00 |  |  | 146.72 | 209.56 |
|  | 070/7/2008 |  |  |  | 269.49 |  |
|  | 07/13/2009 |  |  |  | 497.52 |  |

|      | 07/11/2011 |           |        |          | 122.77   |          |
|------|------------|-----------|--------|----------|----------|----------|
| 2009 | 11/22/2010 | 19,182.00 |        |          | 685.92   | 420.36   |
|      | 07/11/2011 |           |        |          | 1,114.62 |          |
|      | 10/29/2012 |           |        |          | 2,486.46 |          |
| 2010 | 11/12/2012 | 18,827.00 | 386.59 | 4,056.07 | 1,712.56 | 1,094.53 |
| 2011 | 11/19/2012 | 44,593.00 | 290.36 |          | 1,566.44 | 706.03   |

Id. ¶¶ 5, 6.

The IRS issued notice of the assessments described above and made demand for payment upon Samuel and Elizabeth Crews. Id. ¶ 7. On June 19, 2015, the Department of Justice received a payment in the amount of $170,632.90 on behalf of the United States Treasury from the proceeds of the sale of Samuel and Elizabeth Crews' residence. Freeman Supp. Decl. ¶ 7 (Ex. to Pl. Supp.). The payment has been applied towards the outstanding joint federal income taxes for the 2002, 2006, 2009, 2010 and 2011 tax years as of June 19, 2015. Id. The unpaid balance of the assessments for the 2002, 2006, and 2009-2011 years, prior to application of the proceeds from the sale of the reisidence amounts to $182,429.53, plus accrued interest[2] through June 19, 2015, totals $186,595.99. Id. at ¶ 8. As a result of the sale of the property, the joint federal income tax liabilities for the 2002, 2006, 2009, and 2010 tax years have been paid in full as of June 19, 2015. Id. at ¶ 9. Mr. and Mrs. Crews still owe $15,960.09 for their joint federal income tax liability for 2011, plus statutory interest according to law from July 24, 2015. Id.

### B.     Samuel Crews Federal Income Tax Liabilities

Samuel Crews did not file a federal tax return for the 2004 tax year. Freeman Decl. ¶ 8. On

---

[2] Interest at the applicable quarterly rate is compounded daily in accordance with 26 U.S.C. §§ 6621-6622. Freeman Supp. Decl. ¶ 8.

the dates set forth below, a delegate of the Secretary of the Treasury assessed against Samuel Crews unpaid federal income tax, penalties and interest for 2004 in the amounts shown below after an examination and issuance of a statutory Notice of Deficiency.

| Tax Year | Assessment Date | Tax | Estimated Tax Penalty | Late-Filing Penalty | Failure-to-Pay Penalty | Interest |
|---|---|---|---|---|---|---|
| 2004 | 05/12/2008 | 15,146.00 | 64.80 | 792.90 | 651.94 | 1,057.12 |
| 2004 | 07/13/2009 | | | | 229.06 | |

Id. ¶ 8.

Samuel Crews did not file a petition to redetermine the Notice of Deficiency for 2004 with the United States Tax Court within the time provided by the Internal Revenue Code. Id. ¶ 9. Notice of the assessments described above, and demand for payment were made upon Samuel Crews. Id. ¶ 10. Despite notice and demand, Samuel Crews has failed to pay the amount of these assessments in full and owes to the United States for his unpaid 2004 federal income tax liability the amount of $8,179.22, plus interest and other statutory accruals as of July 24, 2015. Freeman Supp. Decl. ¶ 12.

    **C.**    **Trust Fund Recovery Penalties Assessed Against Samuel Crews**

In addition, Samuel Crews was the owner of Crews Law Firm, P.A. (the Firm) which operated in Columbia South Carolina. Barnett Decl. Ex. 2 (Ex. to Pl. Motion); Freeman Decl. Ex. 8. During the tax periods ending March 31, 2004, and December 31, 2004, Samuel Crews:

    a. served as the president and only officer of the Firm;

    b. was responsible for the daily operations of the Firm;

    c. determined the financial policy of the Firm;

    d. directed and authorized payments of bills on behalf of the Firm;

e. opened and closed bank accounts, guaranteed or co-signed loans, signed checks, including payroll checks on behalf of the Firm;

f. authorized federal tax deposits and prepared and signed payroll tax returns, on behalf of the Firm;

g. failed to remit to the IRS all of the employment and income taxes withheld from employees of the Firm; and

h. paid or authorized payments to the Firm's creditors.

Barnett Decl. Ex. 2; Freeman Decl. Ex. 8.

Samuel Crews was solely responsible for collecting, truthfully accounting for, or paying over to the United States the trust fund taxes for the tax periods ending March 31, 2004, and December 31, 2004. Barnett Decl. Ex. 2. Samuel Crews "made all business decisions on what creditors were paid and when" and "signed all checks" during the tax periods ending March 31, 2004, and December 31, 2004. Id. Samuel Crews "signed all tax returns" and "accept[s] full responsibility for all tax returns." Id. Samuel Crews first learned of the delinquent taxes when he received notices from the IRS in 2005. Freeman Decl. Ex. 8.[3] During the time the delinquent taxes were increasing, Samuel Crews continued to pay other expenses for the firm, including payroll and utilities. Id.

On November 20, 2006, a delegate of the Secretary of the Treasury of the United States assessed Trust Fund Recovery Penalties pursuant to 26 U.S.C. § 6672 against Samuel Crews in the amounts of $13,383.42 and $14,484.38 for the tax periods ending March 31, 2004, and December

---

[3]This form, entitled Report of Interview with Individual Relative to Trust Fund Recovery Penalty or Personal Liability for Excise Taxes, includes signatures from Mr. Crews and Gloria Spann, Interviewer, dated April 4, 2004. However, the form includes references to multiple dates in 2005. Thus, it is clear from the content of the form that the signature date is a scrivener's error.

31, 2004, respectively. Freeman Decl. ¶ 11. A delegate of the Secretary of the Treasury issued notices of the Trust Fund Recovery Penalties described above to Samuel Crews and made demand for payment upon Samuel Crews. Id. ¶ 12. Despite notice and demand for payment, Samuel Crews has failed to fully pay the Trust Fund Recovery Penalty Assessments at issue and owes the United States the amount of $19,453.03 for the tax period ending March 31, 2004, and $21,559.49 for the tax period ending December 31, 2004, plus statutory interest according to law from July 24, 2015. Freeman Supp. Decl. ¶ 14.

### III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary

judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.     DISCUSSION

### A.     Federal Income Tax Liabilities

It has long been held that a "ruling [by the Commissioner of Internal Revenue] has the support of a presumption of correctness and the petitioner has the burden of proving it to be wrong." Welch v. Helvering, 290 U.S. 111, 115 (1933). This presumption of correctness applies to suits in which the Government brings suit to reduce a liability to judgment. United States v. Sarubin, 507 F. 3d 811, 816 (4th Cir. 2007); United States v. Pomponio, 635 F. 2d 293, 296-297 (4th Cir. 1980). The Government establishes a prima facie case of a defendant's tax liability by submitting Forms 4340 to the court. See United States v. Pomponio, 635 F.2d 293, 296 (4th Cir.1980). After the United States establishes a prima facie case, the burden shifts to the defendant to demonstrate that the assessment was incorrect or arbitrary. Id. at 296.

The Certified Transcripts submitted as exhibits to the Declaration of Richard Freeman filed are presumptive proof of the validity of the assessments against Samuel and Elizabeth Crews for their joint federal income tax liabilities (including penalties and interest ) for the 2011 tax year and Samuel Crews for his individual tax liability for the 2004 tax year. See Sarubin, 507 F.3d at 816-17. Samuel Crews failed to timely respond to the motion for summary judgment, and, thus, has failed to meet his burden of demonstrating that the assessments are incorrect or arbitrary. Although he subsequently filed a response to the Government's supplement following the sale of property, this response is insufficient to create a genuine dispute of material fact.

Once the United States establishes a prima facie case of a defendant's tax liability, the burden shifts to defendant to demonstrate that the assessment was incorrect or arbitrary. Pomponio, 622 F.2d at 296. The taxpayer must present evidence sufficient to support a finding that the assessment is wrong. Higginbotham v. United States, 556 F.2d 1173, 1176 (4th Cir. 1977). Mr. Crews has not presented any such evidence. The assessment of the joint tax liability for 2011 is based on the taxes they reported on returns they filed with the IRS. Freeman Decl. ¶ 4. Because Mr. Crews did not file a tax return for 2004, the assessment was made after examination and issuance of a Notice of Deficiency. Freeman Decl. ¶ 8. Mr. Crews did not file a petition in the Tax Court for a redetermination of the deficiency pursuant to 26 U.S.C. § 6213. Freeman Decl. ¶ 9. In his response to the Government's supplement, Mr. Crews argues that he was not aware that a tax return had not been filed for 2004. Nevertheless, a taxpayer's only remedy to challenge a deficiency notice is to petition the Tax Court for a redetermination of the deficiency, absent evidence that the taxpayer fully satisfied the income tax deficiency assessment. See Smith v. United States, 495 F. App'x 44, 49

(Fed. Cir. 2012).[4] Accordingly, Mr. Crews may not challenge the assessment in this case.

### B.     Trust Fund Recovery Penalties

The Internal Revenue Code requires an employer to deduct and withhold income and social security taxes from the wages paid to its employees. 26 U.S.C. §§ 3102(a), 3402(a); Erwin v. United States, 591 F.3d 313, 319 (4th Cir. 2010). Because the employer holds these taxes as "special fund[s] in trust for the United States," 26 U.S.C. § 7501(a) (emphasis added), the withheld amounts are commonly referred to as "trust fund taxes." Slodov v. United States, 436 U.S. 238, 243 (1978) (internal quotation marks omitted). These "trust fund taxes" are for the exclusive use of the United States and cannot be used to pay the employer's expenses, including salaries, or for any other purpose. See 26 U.S.C. §§ 3102(b), 3403 & 7501(a); Plett v. United States, 185 F.3d 216, 218 (4th Cir. 1999).

The employer is required to report the amount of withheld taxes on its payroll tax return (Form 941), which it must file every calendar quarter by the last day of the next month. See 26 C.F.R. § 31.6011(a)-4(a)(1); 26 C.F.R. § 31.6071(a)-1(a). The withholding tax liability arises at the time the wages are paid, not on the actual due date of the quarterly tax return. See Kalb v. United

---

[4]Smith provides that

> When a taxpayer is assessed with an income tax deficiency, he may challenge that assessment in one of two ways. One way is to pay the tax, request a refund from the IRS, and then file a refund suit in the Court of Federal Claims or in a district court. I.R.C. § 7422(a). The Court of Federal Claims lacks jurisdiction over a tax refund suit unless the assessment has been fully paid. See Ledford v. United States, 297 F.3d 1378, 1382 (Fed.Cir.2002). In the alternative, the taxpayer can file a petition with the Tax Court without paying the assessment. See Flora v. United States, 362 U.S. 145, 163, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960).

Smith, 495 Fed. App'x at 48.

States, 505 F.2d 506, 509 (2d Cir. 1974); Newsome v. United States, 431 F.2d 742, 746 (5th Cir. 1970). Additionally, once the federal income and social security taxes are withheld from the employees' wages, the United States is required to credit the amount withheld against the employees' individual income tax liabilities, regardless whether such taxes are actually paid to the United States and even though the credits may result in refunds to the employees. 26 U.S.C. § 31(a); 26 C.F.R. § 1.31-1(a); Slodov, 436 U.S. at 243. Therefore, "unless the government has recourse against the person or persons responsible for nonpayment, the taxes will be lost." Olsen v. United States, 952 F.2d 236, 238 (8th Cir. 1991).

To deter taxpayers from dipping into the trust fund taxes, federal law imposes personal liability on the employer's officers or agents responsible for "the employer's decisions regarding withholding and payment" of the taxes. Slodov, 436 U.S. at 247. Thus, 26 U.S.C. § 6672 provides that:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

"Although labeled as a 'penalty,' § 6672 does not actually punish; rather, it 'brings to the government only the same amount to which it was entitled by way of the tax.'" Erwin, 591 F.3d at 319 (citing Turnbull v. United States, 929 F.2d 173, 178 n.6 (5th Cir. 1991)).[5]

---

[5] In Turnbull, the Fifth Circuit continued by explaining, "[i]n other words, the government only collects the taxes due, not both the taxes due and an additional penalty equal to the amount of the taxes. Therefore, section 6672 is simply a means of ensuring that the tax which is unquestionably owed to the Government is paid." Turnbull, 929 F.2d at 178 n.6 (citing Newsome v. United States, 431 F.2d 742, 745 (5th Cir.1970) (internal citations omitted).

Samuel Crews "admits and has never denied that he is solely responsible for collecting, truthfully accounting for, or paying over to the United States the trust fund taxes for the tax period in question." Barnett Decl. Ex. 2.

To determine whether the "responsible person" "willfully" failed to collect, account for, or remit payroll taxes to the United States, the inquiry focuses on whether the responsible person had "knowledge of nonpayment or reckless disregard of whether the payments were being made." Erwin, 591 F.3d at 325 (quoting Plett v. United States, 185 F.3d 216, 219 (4th Cir. 1999)); Johnson v. United States, 734 F.3d 352, 359 (4th Cir. 2013). A responsible person's intentional preference of creditors other than the United States establishes willfulness as a matter of law; such an intentional preference occurs when the responsible person knows of or recklessly disregards an unpaid deficiency. Id.; Turpin, 970 F.2d at 1347. Furthermore, when a responsible person learns that withholding taxes have gone unpaid, he has a duty to use all current and future unencumbered funds available to the corporation to pay back those taxes. Johnson, 734 F.3d at 364 (citing Erwin, 591 F.3d at 326). If a responsible person thereafter knowingly permits payments of corporate funds to be made to other creditors, a finding of willfulness is appropriate as a matter of law. Id. See also Newbill v. United States, 441 Fed.Appx. 184, 189 (4th Cir. 2011).

Samuel Crews "made all business decisions on what creditors were paid and when," and "signed all checks." Barnett Decl. Ex. 2. Samuel Crews also "signed all tax returns" and "accept[s] full responsibility for all tax returns." Id. Mr. Crews admitted that he became aware of the delinquent taxes after receiving notices from the IRS in 2005 and "during the time the delinquent taxes were increasing, or anytime thereafter," he paid creditors other than the United States. See Freeman Decl., Ex. 8. Although he asserts that the creditors he paid were those "needed for the

business to operate on a daily basis," such as payroll and utilities, once he learned that withholding taxes had gone unpaid, "he ha[d] a duty to use all current and future unencumbered funds available to the corporation to pay those back taxes." Erwin, 591 F.3d at 326 ("following the lead of every other circuit to consider the question" in so holding); see also Greenberg v. United States, 46 F.3d 239, 244 (3rd Cir. 1994) ("It is no defense that the corporation was in financial distress and that funds were spent to keep the corporation in business with an expectation that sufficient revenue would later become available to pay the United States.").

In his response to the Government's supplement, Mr. Crews argues that he submitted a check dated June 29, 2004, in the amount of $48,632.48,[6] that he "believes . . . was to pay alleged failure to pay withholding taxes he disputed and which [Richard] Freeman[, IRS Revenue Officer,] labels Trust Fund." Crews' Response (Document # 102) p. 5. The check was written from the "Samuel F. Crews III Trust Account," and in the memo line it states "Sam Crews" along with his social security number. Freeman 2nd Supp. Decl. Ex. A. However, it includes no specific instructions for how the payment was to be applied to Mr. Crews' outstanding tax liabilities. The IRS is authorized to credit a payment made by a taxpayer against any outstanding internal revenue tax liability absent specific written directions from the taxpayer as to the application of the payment. See Rev. Proc. 2002-26, 2002-15 I.R.B. 746, 2002-1C.B. 746, WL 545245 (IRS RPR). At the time Samuel Crews made the payment in 2004, he had multiple outstanding tax liabilities, including for the 1998, 2000 and 2001 tax years. Freeman 2nd Supp. Decl. ¶ 4. Because no specific instructions were included with the payment, the payment was applied to these outstanding liabilities. Id. ¶ 5.

---

[6]The amount of this check was actually $48,632.09. See Freeman 2nd Supp. Decl. Ex. A (Ex. to Government's Reply (Document # 105)).

Even if Mr. Crews could argue that the failure to pay the March 31, 2004, trust fund taxes was not willful because he intended to pay those taxes with the check he submitted in June of 2004, he admitted in an interview with an IRS agent specifically addressing the trust fund taxes that he became aware of the delinquent taxes after receiving notices from the IRS in 2005. See Freeman Decl., Ex. 8. Thus, at that time he became aware that the June 29, 2004, check was not applied to the trust fund taxes as he intended, and that they were still outstanding. He further admitted that "during the time the delinquent taxes were increasing, or anytime thereafter," he continued to pay creditors other than the United States. Id. Accordingly, his failure to pay the trust fund taxes was willful and he is liable for the Trust Fund Recovery Penalties (again, although labeled a "penalty," it is the tax amount actually due, see footnote 5, supra) assessed against him for the tax periods ending March 31, 2004, and December 31, 2004.

**V.    CONCLUSION**

For the reasons discussed above[7], it is recommended that (1) the Government's Motion for Summary Judgment (Document # 62) be granted, (2) the Joint Motion for Entry of Consent Judgment (Document # 81) by the Government and Elizabeth Crews be granted, and (3) the remaining unpaid federal tax liabilities and Trust Fund Recovery Penalties be reduced to judgment as follows:

---

[7]In his response to the Government's supplement, Mr. Crews raises other arguments alleging misconduct by IRS employees and "bullying" by counsel for the Government. As stated above, Mr. Crews failed to file a response to the Government's original motion for summary judgment, and was specifically warned of the consequences for failing to do so. He was allowed the opportunity to respond to the supplement filed by the Government, which, in essence, amended the balances owed following the sale of property. In his response, Mr. Crews presents arguments as to the demeanor and process employed by the Government ; however, he fails to create an issue of fact as to the amounts sought by the Government.

- $15,960.09 against Samuel F. Crews, III, and Elizabeth W. Crews for their joint federal income tax liability for 2011, plus statutory interest according to law from July 24, 2015;

- $8,179.22 against Samuel F. Crews, III, for his individual federal income tax liability for 2004, plus interest and other statutory accruals as of July 24, 2015;

- $19,453.03 against Samuel F. Crews, III, as a Trust Fund Recovery Penalty pursuant to 26 U.S.C. § 6672 for the tax period ending March 31, 2004, plus statutory interest according to law from July 24, 2015; and

- $21,559.49 against Samuel F. Crews, III, as a Trust Fund Recovery Penalty pursuant to 26 U.S.C. § 6672 for the tax period ending December 31, 2004, plus statutory interest according to law from July 24, 2015.

 s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

August 20, 2015  
Florence, South Carolina

**The parties are directed to the important information on the following page.**